UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| FRANK U. WETMORE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Docket No. 06-26-P-S |
| | ) | |
| MACDONALD, PAGE, SCHATZ, | ) | |
| FLETCHER & COMPANY, LLC, | ) | |
| | ) | |
| Defendant | ) | |

### RECOMMENDED DECISION ON DEFENDANT'S MOTION TO DISMISS

The defendant, Macdonald, Page, Schatz, Fletcher & Company, LLC, moves to dismiss all counts asserted against it by the plaintiff, Frank U. Wetmore. I recommend that the court grant the motion.

### I. Applicable Legal Standard

The defendant's motion invokes Fed. R. Civ. P. 12(b)(6), which provides for dismissal upon failure to state a claim on which relief may be granted. Defendant's Motion to Dismiss ("Motion") (Docket No. 4) at 5. "[I]n ruling on a motion to dismiss [under Rule 12(b)(6)], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). The defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would not be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 87 (1st Cir. 2001); *see also Wall v. Dion*, 257 F. Supp.2d 316, 318 (D. Me. 2003).

1

## II. Factual Background

The complaint includes the following relevant allegations. The plaintiff is a resident of Massachusetts. Complaint (Docket No. 1) ¶ 2. Prior to August 2003, he was the majority owner and treasurer of Portland Shellfish Company, Inc. (the "Company"), a Maine-based processor of live shellfish. *Id*. ¶ 6. He owned 300 voting and 150 non-voting shares of the Company's stock; the remaining shares (300 voting) were held by Donna Holden. *Id*. The Company had issued only these 750 shares. *Id.* Donna Holden's husband, Jeff Holden, served as the president of the Company and managed its day-to-day operations, particularly production, procurement and sales. *Id*. ¶ 7.

Under the Company's Shareholders' and Officers' Agreement (the "Agreement"), the Company's board of directors was restricted to two directors, the plaintiff and Jeff Holden. *Id*. ¶ 8. By late 2001, a number of disagreements had arisen between the plaintiff and the Holdens over the management and direction of the Company. *Id*. ¶ 9. On or about January 28, 2002, after unsuccessful efforts to resolve these differences, the Holdens invoked Section 11.5.5 of the Agreement, which provides:

> In the event the operations of the Company are impaired because of deadlock on the board of directors, the shareholders agree that they shall each have the right to acquire the other shareholder's stock, as follows. In the event of deadlock, the directors shall hire an accountant at Macdonald Page & Co., South Portland, Maine, to determine the value of the outstanding shares. Once the value is reported to the directors by the accountant, the directors shall call a meeting of the shareholders. At such meeting, each shareholder shall have the right to buy out the other shareholder(s)' interest, at a price equal to or greater than the price determined by the accountant. The highest offer made by any shareholder at the meeting shall be binding upon the other shareholder(s). The shareholder who is acquiring the stock shall be required to close on the acquisition within 90 days of the meeting of the shareholders.

*Id*. ¶ 10. A copy of the Agreement is attached to the complaint. *Id*., Exh. A.

Thereafter, the plaintiff and Jeff Holden retained the defendant, a Maine limited liability company with a principal place of business in South Portland, Maine, pursuant to section 11.5.5 of the Agreement to determine the value of the Company's outstanding shares. *Id*. ¶¶ 3, 11. In its engagement letter, the defendant stated that it would estimate the fair market value of a 100% common equity interest in the Company and defined "fair market value" as "[t]he price at which the property would change hands between a willing buyer and a willing seller, neither being under a compulsion to buy or sell and both having reasonable knowledge of relevant facts." *Id*. The engagement letter also stated: "We understand that our valuation conclusion will be used in conjunction with the Company's 'Shareholder's [sic] and Officer's [sic] Agreement' dated February 1, 1994, paragraph 11.5.5 . . . ." *Id*. ¶ 12.

On or about January 10, 2003 the defendant issued its valuation report for the Company, which concluded that "a reasonable estimate of the fair market value of the 100% common stock interest of the Company, as of June 30, 2002, is $1,090,000." *Id*. ¶ 13. After the report was issued, Donna Holden offered to purchase the plaintiff's shares pursuant to Section 11.5.5 at the price determined by the defendant's valuation. *Id*. ¶ 17. The plaintiff resisted and offered $1.25 million for Donna Holden's shares, contingent upon an agreement by Jeff Holden not to compete with the Company or two-year employment agreements covering Jeff Holden and another employee. *Id*. The plaintiff also offered to sell the Company to a third party. *Id*.

The Holdens rejected both of the plaintiff's offers. *Id*. ¶ 18. Donna Holden insisted that the plaintiff was obligated to sell his shares pursuant to Section 11.5.5 and threatened to sue if he refused. *Id*. The plaintiff had no choice but to accept Donna Holden's offer to purchase his stock at the price set by the defendant's valuation, the only amount Donna Holden offered. *Id*. On or about August 29, 2003 the plaintiff sold his shares of the Company to Donna Holden for $700,705, representing 60 per

cent of the value assigned by the defendant to the Company's total stock, adjusted to eliminate a seven per cent "marketability discount" included in the defendant's valuation. *Id*. ¶ 19.

The complaint alleges that the defendant's valuation of the Company "was well less than half the actual value of Portland Shellfish's total stock," *id*. ¶ 16, and that the plaintiff received less than fair market value for his interest as a result, *id*. ¶¶ 24, 29. Specifically, the complaint alleges professional negligence (Count I), breach of contract (Count II) and negligent misrepresentation (Count III). *Id*. ¶¶ 20-33.

### III. Discussion

The defendant contends that the plaintiff cannot establish causation on any of his claims and that dismissal is therefore appropriate. Motion at 5. Specifically, it asserts that its appraisal could not have caused the plaintiff any damages because the Agreement establishes on its face that, contrary to the allegation in the complaint, the plaintiff always had a choice whether to sell his shares to Donna Holden at the price she offered, which was based on the defendant's appraisal. *Id.* at 5-6. The plaintiff responds that the defendant's valuation was in fact binding. Plaintiff's Opposition to Defendant's Motion to Dismiss ("Opposition") (Docket No. 7) at 7. The court may consider the terms of the Agreement in connection with the motion to dismiss without transforming the motion into one for summary judgment because the agreement was attached to the complaint, its authenticity is not disputed, it is central to the plaintiff's claim and it is sufficiently referred to in the complaint. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

Each of the plaintiff's three claims includes an element of causation. Count I alleges professional negligence. Complaint ¶¶ 20-24. In order to recover on this claim, the plaintiff must establish that the defendant owed him a duty of care, that the duty was breached and that the breach was the proximate cause of the plaintiff's injury. *Graves v. S. E. Downey Registered Land Surveyor,*

4

*P.A.*, 885 A.2d 779, 782 (Me. 2005) (standards for demonstrating elements of professional negligence do not differ from profession to profession). Count II alleges breach of contract. Complaint ¶¶ 25-29. The elements of this claim are the breach of a material term in a valid contract, causation and damages. *See Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 724 A.2d 1248, 1250 (Me. 1999). Count III alleges negligent misrepresentation. Complaint ¶¶ 30-33. The Maine Law Court has adopted the definition of this tort from the Restatement (Second) of Torts:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (citation and emphasis omitted). "The same rules of causation generally apply whether the cause of action sounds in contract, negligence, or breach of fiduciary duty." *Niehoff v. Shankman & Assocs. Legal Ctr., P.A.*, 763 A.2d 121, 124 (Me. 2000). Proximate cause exists in professional malpractice cases where the negligence played a substantial part in bringing about or actually causing the damage and the damage was either a direct result or a reasonably foreseeable consequence of the negligence. *Id*.

The defendant observes that it is a necessary element of each of the plaintiff's stated causes of action that the appraisal legally caused him to receive less than fair market value for his shares. Motion at 5. Because the Agreement did not make the defendant's appraisal binding, it asserts, the appraisal could not have caused the plaintiff any injury. *Id*. at 5-6. The only thing made binding by the language of the Agreement quoted in the complaint is the highest offer made by any shareholder at the meeting to be held after the defendant submitted its appraisal. The plaintiff responds that all he has to do to survive the motion to dismiss is to adequately plead that the defendant's negligence was a substantial factor in bringing about his alleged harm, and he has done that. Opposition at 6-7.

However, denying the motion to dismiss would be an empty exercise if the pleading is in fact contradicted by the unambiguous language of the document on which the claims are based. The plaintiff does go on to argue that the defendant's valuation of the stock was in fact binding. *Id*. at 7-8.

Even in making the latter argument, however, the plaintiff states that the Agreement "provides that once Ms. Holden exercised her right to buy Mr. Wetmore out, the offer was 'binding' on Mr. Wetmore *unless he offered more*." *Id*. at 7 (emphasis added). That is precisely the point. Nothing in the Agreement or in the other factual allegations of the complaint required the plaintiff to accept Donna Holden's offer. All he had to do was offer her the same amount or more per share for her shares than she had offered him for his. Nothing in the language of section 11.5.5 requires any shareholder to accept any offer from another shareholder unless and until that shareholder is unwilling to offer more per share for the shares of the offering shareholder. Nor does Donna Holden's rejection of the plaintiff's offer, which was made with conditions other than those contemplated by the clear language of the agreement, have any effect on the consideration of the plaintiff's ability to prove causation in this case. Donna Holden's alleged threat to sue the plaintiff if he refused to sell her his shares did not arise inexorably from the defendant's appraisal. Again, the plaintiff had many options, ranging from challenging the appraisal in any of a number of ways to offering Donna Holden the same amount per share to offering her more per share. None of these options was foreclosed by the language of the Agreement.

The plaintiff asserts that "had the Macdonald Page valuation been accurate, the 'floor' for the negotiations would have been at least two times higher than it actually was, and Ms. Holden would have been forced to pay at least that much for Mr. Wetmore's shares." *Id.* at 9. This statement is purely speculative. If the valuation had been higher, there is no way to know whether Donna Holden

6

would have made an offer at all or what the plaintiff might have done if she had. Donna Holden would not have been "forced" to pay anything.

The same result is true of the breach-of-contract claim. Contrary to the plaintiff's assertion, the language of the defendant's engagement letter on which he relies, *id.* at 3, does not "expressly acknowledge[] that the valuation would be relied upon to establish the buy-out price under section 11.5.5 of the Shareholders' Agreement." A statement that the defendant "understand[s] that our valuation conclusion will be used in conjunction with the Company's 'Shareholder's [sic] and Officer's [sic] Agreement' dated February 1, 1994, paragraph 11.5.5," *id.*, cannot reasonably be read to mean that the valuation conclusion will establish the buy-out price. By the terms of the Agreement, only the shareholders could do that.

### IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion to dismiss be **GRANTED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of May, 2006.

/s/ David M. Cohen  
David M. Cohen  
United States Magistrate Judge